CHRISTINE M. LITTLE, APPELLEE AND CROSS-APPELLANT, V.
JAMES L. GILLETTE ET AL., APPELLANTS AND CROSS-APPELLEES.

354 N.W.2d 147

Filed August 10, 1984.    Nos. 83-442, 83-686.

Daniel E. Wherry of Johnston, Barber, Wherry & Knight, for appellant Gillette.

Thomas J. Culhane and Tamra L. Wilson of Erickson, Sederstrom, Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., for appellant Security Bank and Trust Company.

Thomas J. Fitchett of Pierson, Ackerman, Fitchett, Akin & Hunzeker, for appellants Edwards and Gateway.

Stephen Speicher, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

WHITE, J.

Appellee, Christine M. Little Koenig (Little), brought this action to recover damages for fraud. Her second amended petition was based on both common-law fraud and a violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 et seq. (Reissue 1978), for damages sustained by her in the purchase and operation of a Mexican fast-food franchise restaurant in Beatrice, Nebraska. As defendants, she named Donald B. Edwards (Edwards), Gateway Realty of Beatrice, Inc. (Gateway), James L. Gillette (Gillette), First Security Bank and Trust Co. (Bank), Nancy Gillette, and First Security Savings of Beatrice, Nebraska (First Security Savings). The case was tried to a jury in the district court for Gage County, Nebraska. At the close of Little's evidence the court, on the parties' respective motions, dismissed Nancy Gillette and First Security Savings. At the close of all the evidence the court, on its own motion, consolidated the statutory and common-law causes of action. The jury was instructed on the elements of common-law fraud only. The jury returned a verdict for Little against all the remaining defendants in the amount of $43,220.30.

All the appellants filed timely motions for a new trial as well as motions for judgment notwithstanding the verdict. These motions were overruled on May 9, 1983, and the court requested Little to submit information relative to award of attorney fees under § 59-1609. Appellants, having orally suggested the possibility that § 59-1617 exempted them from liability under the Consumer Protection Act, then filed their motions for leave to amend their general denials and plead the effect of § 59-1617. In response, Little filed a motion for leave to amend her second amended petition, a motion she had made previously during the trial.

On August 19, 1983, the court overruled all the parties' motions for leave to file amended pleadings, denied Little's request for statutory damages under § 59-1609, entered

judgment on the verdict, and awarded Little costs and $10,900 in attorney fees pursuant to § 59-1609. Appellants, having previously appealed from the order overruling their motions for a new trial and for judgment notwithstanding the verdict, then filed a separate appeal from the order awarding attorney fees. Those appeals and the appellee's cross-appeal have been consolidated in this court.

The facts, taken in light most favorable to the prevailing party, reveal that in July or August 1979 Little, having previously had some success running a motel, sought to leave her job at a drugstore in Beatrice and reenter the motel field. Gateway, through one of its agents, Edwards, had sold her the home in which she then resided. She had been satisfied with this transaction and went to Gateway and Edwards for help in locating a motel.

Edwards informed her that he knew of no motels currently available, and he showed her a clothing store instead. After reviewing certain financial records, which showed gross sales of $20,000 per year and a net profit of $2,000, Little informed Edwards that she was not interested in the business as it had insufficient net profit.

On September 12, 1979, Gateway obtained a listing contract from Beatrice Taco Corporation on a piece of commercial real estate. Edwards showed the property to Little. Little informed Edwards that a restaurant business did not interest her. Two weeks later Edwards and Little revisited the site. On that occasion they went inside. Edwards told her the business had been closed but could be a good business if the right person got in there; that Little was the right person; and that he knew the business could make money. Subsequently, a third trip was made to the site. Frank Smith, Jr., Gateway's president, accompanied Little and Edwards. They discovered certain documents inside the building. All three examined them, but none was able to gain any useful information concerning the past operation's profit or loss. They also discovered a brochure from the Aunt Chilotta franchise which showed eight separate calculations of net income per year based on different levels of sales. Edwards, however, told Little that the figures shown would have to be checked out, since they appeared to depend on

local variables. He was to make that investigation but never did. Little further testified that Edwards quoted her a figure of $10,000 net profit per month as likely from the operation of the business. He made these statements to her at his office, in her home, and during two conversations at the offices of the Bank, where Little had gone with him to discuss financing possibilities. On these latter two occasions Edwards' statements were confirmed by Gillette; both Gillette and Edwards represented to the appellee that she could make a net profit of $10,000 per month. Little also testified that Nancy Gillette, Gillette's wife and a stockholder of the Bank and an officer, director, and stockholder of First Security Savings, discussed the business' potential and represented to the appellee that she could make a profit.

A purchase agreement for the restaurant was signed by Little on October 16, 1979, for $75,000. To raise the purchase price Little borrowed money from both the Bank and from First Security Savings. After a 2-week training course offered by the Aunt Chilotta franchise, the restaurant was opened by the appellee on January 7, 1980. Little managed the property until about May 1980 and then hired a Mr. Crosier as her assistant manager. Plaintiff fired Crosier after about 2 weeks, and the business was closed for about 2 weeks thereafter, until early June 1980. Crosier was then rehired. In December 1980 David Pethoud was hired to manage the property. Pethoud managed the property for 6 months, until June 1981. At that time Little resumed management of the property, and on September 28, 1981, the restaurant was closed. In December 1980 appellee listed the property for sale with Gateway, but a buyer was never found. Except for a short period of time, the business was operated at a loss.

The first question to be resolved on appeal is whether or not a cause of action for fraudulent misrepresentation exists under the facts of this case. We believe that it does.

It is a general rule that fraud must relate to a present or preexisting fact and cannot ordinarily be predicated on an unfulfilled promise or a statement as to future events. *Cook Livestock Co., Inc. v. Reisig*, 161 Neb. 640, 74 N.W.2d 370 (1956); *Boettcher v. Goethe*, 165 Neb. 363, 85 N.W.2d 884

(1957). This general rule has a well-recognized exception, the exception being when such representations as to future acts are falsely and fraudulently made with an intent to deceive. *Central Constr. Co. v. Osbahr*, 186 Neb. 1, 180 N.W.2d 139 (1970); *Transportation Equipment Rentals, Inc. v. Mauk*, 184 Neb. 309, 167 N.W.2d 183 (1969). In *Ames Bank v. Hahn*, 205 Neb. 353, 356, 287 N.W.2d 687, 689 (1980), this court had occasion to decide whether a party had adequately pleaded an intent to deceive, and held:

> The requirement of scienter is satisfied by alleging that the person making the statement knew the statement was false, or made it as a positive statement without knowledge as to whether it was true or false, and the false statement was made with intention that it should be acted upon.

In the instant case the jury was instructed that actionable fraud may not be based upon mere expression of opinion unless such an opinion is given with an intent to deceive. The instruction was proper and supported by Nebraska case law. See, *Central Constr. Co. v. Osbahr, supra; Ames Bank v. Hahn, supra*. The record contains evidence from which the jury could conclude that the statements of Edwards and Gillette were made with an intent to deceive.

The jury heard direct testimony that Edwards knew that the appellee was seeking to buy a business that generated at least a reasonable profit. In fact Edwards was told that the reason Little did not wish to buy the clothing business that Edwards had shown her was because the previous operation did not generate enough profit. It could be inferred from the evidence that Gillette also knew that the appellee was seeking to buy a business with a profit potential. The record discloses that prior to the time that the purchase was completed, Gillette had told Smith that the previous operation of the Beatrice Taco Corporation was a "financial disaster." Gillette's brother was the president of the previous operation, and the Bank held the mortgage on the property. This mortgage was 12 months in default. Even after Edwards, who had been an owner of a fast-food business in Beatrice for 15 years, reviewed the Aunt Chilotta brochure which detailed expected profit potentials

based on various degrees of volume, he continued to tell the appellee that she could make $10,000 a month net profit. Little testified that none of the appellants told her that the previous operation was a failure. She further testified that she relied on the representations of Edwards and Gillette that she could make a profit when she purchased the business. The motives for the false representation are clear: commission on the sale for Edwards and Gateway, and inducement for the sale of what was essentially property of the Bank for Gillette.

Against this background there was sufficient evidence in which the jury could find that the representations made by Edwards and Gillette came within the exception of opinions given with "intent to deceive." It is this finding of fraudulent intent that distinguishes the instant case from the cases of *Smith v. Wrehe*, 199 Neb. 753, 261 N.W.2d. 620 (1978), and *Boettcher v. Goethe, supra.*

In the instant case Edwards' and Gillette's representations, although in the form of opinions, could have reasonably been understood by the appellee to imply that there were facts that justified the opinion or at least that there were no facts that were incompatible with it. Such is not the case, as all of the appellants knew that the previous operation was a failure. Although some allowance must be made for "sales talk," the appellants' false representations amounted to a "con" to induce the appellee to purchase property she otherwise would not have purchased.

The appellants next contend that the appellee's recovery was barred because ordinary prudence would have prevented reliance on the statement. In *Foley v. Holtry*, 43 Neb. 133, 143, 61 N.W. 120, 123-24 (1894), we stated:

> We have little sympathy with the theory always advanced in such cases that the defendant should be protected from the consequences of false statements made by him for the purpose of inducing the plaintiff to act, because the plaintiff had sufficient confidence in the defendant to believe the statement and not proceed upon the assumption that he was dealing with a man unworthy of belief. There are some cases where the fact lies so open before the plaintiff that he is unwarranted in closing his

eyes to its existence and depending upon a statement made to him by the other party. We do not think that this principle applies to any case where an absolute statement of fact is made and where an investigation elsewhere would be necessary to disclose its falsity. . . . In such case the plaintiff may, if he choose, rely upon the representation made to him, and if he do so, the defendant cannot complain.

The appellants shed little light as to what investigation Little could have undertaken to ascertain that the previous operation was operated at a loss. She had asked for previous financial records, to no avail. Her suspicions were somewhat assuaged by the representations that she could make a profit by Edwards and Gillette, both of whom were experienced in business. The question of reliance was properly submitted to the jury, and it determined the issue adversely to the appellants' position. As the jury's determination was not clearly wrong, it will not be reversed on appeal.

Case No. 83-686 presents the question of whether the appellee's attorney was properly awarded fees of $10,900 under the Nebraska Consumer Protection Act, § 59-1609. The appellee invites us to overrule the cases of *Kuntzelman v. Avco Financial Services of Nebraska, Inc.*, 206 Neb. 130, 291 N.W.2d 705 (1980), and *McCaul v. American Savings Co.*, 213 Neb. 841, 331 N.W.2d 795 (1983), in which we held that because the institutions were regulated by the Nebraska Department of Banking and Finance, they were exempt from the provisions of the Consumer Protection Act under § 59-1617. That section states in part:

Exempted Transactions. Nothing in sections 59-1601 to 59-1622 shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the Director of Insurance, the Public Service Commission, the federal power commission or *any other regulatory body or officer acting under statutory authority of this state or the United States* . . . .

(Emphasis supplied.)

The exemption provision of § 59-1617 is clearly stated and is applicable in the instant case. The Bank is regulated by the

Nebraska Department of Banking and Finance. Gateway is regulated by the Nebraska State Real Estate Commission. It is obvious that the appellee's invitation was directed to the wrong branch of government.

In her cross-appeal the appellee first contends that the district court erred in denying her motion for sanctions under Rule 37(d)(1) of the Nebraska Discovery Rules. She contends that because Nancy Gillette, Gillette, and First Security Savings did not appear for the scheduled depositions, her motion for sanctions should have been granted. Rule 37(d)(1) allows sanctions when a party fails "[t]o appear before the officer who is to take his or her deposition, *after being served with a proper notice.*" (Emphasis supplied.)

Although the transcript reveals that notices to take the depositions of the parties were filed, they contain no certificate of service, and the record does not otherwise reveal that the parties were properly served with notice or subpoenaed to compel attendance. Absent compliance with the notice requirements of Rule 26 of the Nebraska Discovery Rules, any sanctions for nonappearance are inappropriate.

Little next contends that the trial court erred in dismissing Nancy Gillette and First Security Savings pursuant to the parties' motions for directed verdict at the close of the appellee's evidence. An essential element required to sustain an action for fraudulent misrepresentation is that a defendant's statement must induce the plaintiff to act to his injury or damage. See *Ames Bank v. Hahn*, 205 Neb. 353, 287 N.W.2d 687 (1980).

Although the appellee stated several times that the statements made by Gillette and Edwards·induced her to buy the business, the record is absolutely silent of any inducement based on Nancy Gillette's statements. The appellee having failed to prove a prima facie case against Nancy Gillette and First Security Savings, they were properly dismissed from the litigation.

The remainder of the parties' assignments of error focuses on the issue of damages.

We have previously held that where a party is induced to enter a contract by fraud, the party must, upon discovery of the

fraud, elect a remedy and shall either affirm the contract and sue for damages or disaffirm and be reinstated to the position existing prior to the contract. *Russo v. Williams*, 160 Neb. 564, 71 N.W.2d 131 (1955). If the party chooses not to rescind the contract but, rather, to affirm it and seek damages for the fraudulent inducement, the party's recovery is based on the difference in value of the property as fraudulently represented and its value in actuality. *Camfield v. Olsen,* 183 Neb. 739, 164 N.W.2d 431 (1969).

> This jurisdiction adheres to what is known as the "benefit-of-the-bargain" rule, that is, that the measure of general damages for fraud in inducing the purchase of property is the difference between the actual value of the property at the time of the purchase and the value it would have had if the seller's representation had been true.

*Rothery v. Pounds*, 150 Neb. 25, 27, 33 N.W.2d 347, 348 (1948).

Although the parties agree that Little's action affirms the agreement to purchase the business, Little presented no proof to justify a benefit-of-the-bargain instruction. The maximum total damages testified to by the appellee is $22,560.54. The jury returned a verdict of $43,220.30. Rather than to speculate as to how the jury reached this verdict, we feel compelled to reverse the jury's verdict and remand the cause as to all the issues of damages raised by the pleadings.

In conclusion, we hold that the appellee had a viable cause of action for fraudulent misrepresentation against Gillette, Edwards, and their respective principals. Because the appellee failed to establish a prima facie case against Nancy Gillette and First Security Savings, those parties were properly dismissed from the lawsuit. Section 59-1617 exempts both Gateway and the Bank from the provisions of the Consumer Protection Act and therefore any award of attorney fees under that act was inappropriate. Because the notice requirements of Rule 26 of the Nebraska Discovery Rules were not complied with, any sanctions against the appellants were also inappropriate. We further conclude that the judgment must be reversed and the cause remanded for a new trial on the issue of damages.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.