CHRISTINE M. LITTLE, APPELLEE AND CROSS-APPELLANT, V. JAMES L. GILLETTE, APPELLEE AND CROSS-APPELLEE, FIRST SECURITY BANK AND TRUST CO., A NEBRASKA BANKING CORPORATION, APPELLANT AND CROSS-APPELLEE.

402 N.W.2d 852

Filed March 27, 1987.    No. 85-569.

Thomas J. Culhane and Tamra L. Wilson of Erickson & Sederstrom, P.C., for appellant.

Stephen Speicher, for appellee Little.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

White, J.

In the original appeal, *Little v. Gillette*, 218 Neb. 271, 354 N.W.2d 147 (1984) (*Little I*), we remanded this cause to the district court for retrial on the issue of damages with respect to a claim of misrepresentation of profit-making potential. The case comes before us for a second time, with both sides appealing aspects of the district court for Gage County's handling of the damages issues. Specifically, the appellant, First Security Bank and Trust Co. (Bank), argues that the jury's award of $121,858 in damages is not supported by the evidence, and the cross-appellant, Christine M. Little Koenig (Little), argues that the district court erred in refusing to allow Little to prove or conduct discovery with respect to special damages. We affirm.

A detailed recitation of the facts concerning the purchase by Little of a fast-food restaurant is included in our opinion disposing of the issues raised in *Little I*. The facts necessary to understand the issues now before us follow.

In *Little I, supra*, we decided that Little had a viable cause of action under the facts of the case and that the jury's determination that the plaintiff was entitled to recover for damages suffered due to the fraudulent representations made to her was not clearly wrong and should be upheld. However, we found it necessary to reverse the jury's verdict of $43,220.30 because it was not supported by the record. We remanded the cause for a new trial "as to all the issues of damages raised by the pleadings." *Id*. at 279, 354 N.W.2d at 153. Judgment on the mandate was filed on October 4, 1984, in the district court for Gage County.

On April 15, 1985, a pretrial conference was held, at which the issue of special damages was discussed. The trial judge considered each measure of consequential damages put forth by the plaintiff to be improper, and so advised the parties. The pretrial report also provided that "[i]f exceptions be taken in writing duly served and filed within seven days from this date, the undersigned judge, upon notice, will settle them. If no

exceptions be taken, the foregoing report shall govern and be effective in all further proceedings in the case." No timely exceptions were taken from the report on the pretrial conference.

At retrial Little testified that James Gillette represented to her that she could net $10,000 per month operating a Mexican fast-food business and that she relied on that representation when she purchased the building. She also testified that Gillette placed no limit on the length of time she could expect to receive such profits.

The measure of general damages specified in *Little I* was the "benefit of the bargain" rule, or the difference between the value of the property purchased if it was as represented and the property's actual value. Two experts testified for the plaintiff as to those values. The first, Frank Frost, a real estate appraiser experienced in assessing businesses, stated that he examined the demographics for Beatrice restaurants and that Little's restaurant would never do well because of its poor location. He also testified that in 1979 and 1980 fast-food investors were asking and getting a rate of return on their investments of $16\frac{1}{2}$ percent per year, which meant that investors expected to recover their investment and some profit in around 6 years. Considering $10,000 per month income, the value of the investment would be approximately $725,000, using the income approach of valuing the property ($10,000 per month, or $120,000 per year, equals $16\frac{1}{2}$ percent of investment's value plus some profit; investment's value equals approximately $725,000).

The second expert witness for the plaintiff was Clay Singleton. He considered a cash-flow of $10,000 a month, assumed that the cash-flow would endure at that rate for 10 to 20 years, and further assumed interest rates. He felt that 10 to 20 years was a reasonable range of duration because Little signed a 10-year note to purchase the property and because the franchisor gave the franchise to Beatrice Taco Corporation for 20 years. He considered the appropriate ranges of interest to be between 12 and 20 percent. Using the most pessimistic set of figures together, and the most optimistic set of figures together, Singleton came up with a range of between $503,096 and

$896,333 for the "as represented" value of the business.

Both of the plaintiff's experts felt that, due to the substantial losses suffered by Little at this location, the actual value of the business was zero.

The defendant's expert witness, Frank Wilson, a real estate appraiser, first took issue with the plaintiff's representation of the "actual" value of the business. He used three approaches. First, he calculated the value of the square footage of the building to be $105 per square foot, by comparing the restaurant to 14 larger buildings. The "actual" value calculated this way, in his opinion, was $87,000. Second, he used depreciation and the cost approach to conclude that the actual value of the building was $92,000. The third approach he used was the income capitalization approach. Using trade journals to determine the profits of similar businesses, he determined the "actual" value to be $88,000. On cross-examination Wilson admitted that seeing the expense sheets for Little's operation lowered his opinion of the "actual" value.

In Wilson's opinion of the "as represented" value, he assumed a net income of $10,000 for a duration of only 6 months. He presumed that $10,000 a month would be $8,000 in excess of profits made by a typical similar operation, and further presumed that ruinous competing facilities would be erected within 6 months, thereby reducing the excess income, for an "as represented" value of $136,000. Wilson admitted on cross-examination that if the operation netted $10,000 a month for more than 6 months, the "as represented" value would be increased. The jury awarded Little $121,858.

The defendant-appellant assigns three errors, all of which are based upon the lack of direct evidence about duration. It argues that the evidence does not support the verdict, that the plaintiff's expert testimony should not have been admitted and should have been stricken, and that it should have been granted motions for judgment notwithstanding the verdict and for a new trial.

Appellant complains on appeal that both of the plaintiff's expert witnesses assumed a duration of profits as part of the basis of their opinions; therefore, the opinions were speculative and not based on facts in evidence, and should not have been

admitted. *Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 277 N.W.2d 236 (1979).

The general rule is that when a properly qualified expert witness testifies as to the value of property, the jury determines the weight and credibility of what the expert considers in coming to a conclusion. *Kohl v. State of Nebraska*, 214 Neb. 348, 334 N.W.2d 173 (1983). Unlike in *Latek v. K Mart Corp.*, 224 Neb. 807, 401 N.W.2d 503 (1987), here the assumptions used by the plaintiff's experts were not proven untrue or to be without any basis in fact. Frost based his duration of 6 years on data known to him, showing that investors expect to recoup their investment in around 6 years, implying that it would be reasonable for Little to expect that her business, if it profited as represented, would maintain that profit for 6 years. Singleton used as durations the terms of the note and franchise agreement. Similarly, the duration used by the defendant's expert was also an assumption based on a theory of ruinous competition. Each had a different basis for his opinion of what the duration should be. Absent an abuse of discretion, a trial judge's ruling regarding the admissibility of expert testimony will not be reversed. *Weiss v. Autumn Hills Inv. Co.*, 223 Neb. 885, 395 N.W.2d 481 (1986).

We have stated in *Iske v. Metropolitan Utilities Dist.*, 183 Neb. 34, 157 N.W.2d 887 (1968), that this court is not a superexpert and will not lay down categorically which factors and principles an expert may or may not consider. Such matters go to the weight and credibility of the opinion itself and not to its admissibility. *Id.* Whether the plaintiff's experts' assumptions regarding duration were the most credible was properly left to the jury. We observe no abuse of discretion on the part of the trial judge in his decision to admit the expert testimony. We hold that the plaintiff's expert testimony was properly admitted, as was the defendant's expert testimony. The verdict is adequately supported by the evidence, and is affirmed.

On cross-appeal the appellee assigns as error the refusal of the district court to allow her to conduct discovery and prove certain special damages. Each issue of special damages was discussed at the pretrial conference and was determined by the

district court to be improper under the circumstances of the case. No timely exception to the report of the pretrial conference was taken. In *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 684-85, 380 N.W.2d 268, 274 (1986), we stated:

> Without . . . objection or exception to the report of pretrial conference, there is nothing preserved for appellate review regarding the trial court's specification of issues to be resolved at trial. Any claimed error based on the issues specified by the trial court was waived by . . . failure to object to the report on the pretrial conference and cannot be asserted for review by this court.

See, also, *Hasenauer v. Durbin*, 216 Neb. 714, 346 N.W.2d 695 (1984). This rule is applicable to the issues raised on cross-appeal. The award and judgment of the trial court are affirmed.

AFFIRMED.