### In re TMJ IMPLANTS PRODUCTS LIABILITY LITIGATION.

**This Document Relates To: All Actions.**

**No. 94–MD–1001.**

United States District Court, D. Minnesota, Third Division.

March 31, 1995.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

### I. INTRODUCTION

These matters, which are consolidated for pretrial purposes under 28 U.S.C. § 1407, are before the Court upon Defendants Corning, Incorporated and Dow Chemical Company's Motions for Summary Judgment. For the following reasons, the Court grants summary judgment in favor of these Defendants.

### II. BACKGROUND

Plaintiffs in these cases seek recovery for injuries they allege were caused by temporomandibular joint (TMJ) implants, some of which were manufactured by Dow Corning Corporation (Dow Corning). Movants Dow Chemical Company (Dow Chemical) and Corning, Incorporated (Corning) each own 50 percent of the shares in Dow Corning, a Michigan corporation. They seek summary judgment on all claims against them.

Physicians recommended the TMJ implants as a means of alleviating pain and difficulties associated with improper functioning of Plaintiffs' temporomandibular joints. The implants received by Plaintiffs contained either silicone or Teflon®. These materials, the Plaintiffs allege, deteriorated following

the implantation of the TMJ devices in Plaintiffs' jaws, causing a serious and painful autoimmune response. In many cases, the autoimmune reaction resulted in permanent destruction of bone and tissue within the jaw.

Those who allegedly marketed the implants to physicians and Plaintiffs included Vitek, Inc., which sold the implants containing Teflon®,[1] and Dow Corning and its subsidiary Dow Corning Wright, which sold implants containing silicone compounds. Plaintiffs do not assert that Dow Chemical or Corning ever sold TMJ implants. Nevertheless, several of the Complaints allege liability against Dow Chemical and Corning through both corporate control claims and direct liability. Plaintiffs argue that genuine issues of material fact exist as to whether Dow Chemical should be held liable under a variety of theories, including fraud, aiding and abetting tortious conduct, coconspiracy, concert of action, a trademark licensors theory, negligent performance of an undertaking, state consumer protection laws, and participation theory.

## III. DISCUSSION

■■■ A transferee court has authority to enter dispositive orders terminating cases transferred under 28 U.S.C. § 1407. *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 364–68 (3rd Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). In analyzing questions of federal law, the transferee court should give "close consideration" to the law of the transferor court, but should apply the law as it has been interpreted by the transferee circuit court. *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1176 (D.C.Cir.1987). For issues governed by state law, the transferee court must apply the state law that would have been applied if the case had not been transferred. *Id.* at 1175 ("Our system contemplates differences between different states' laws; thus a multidistrict judge asked to apply divergent

state positions on a point of law would face a coherent, if sometimes difficult, task."); *see Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964).

■■■ Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219–20 (8th Cir.1992). The court determines materiality from the substantive law governing the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material. *Id.* A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49, 106 S.Ct. at 2510.

### A. Corporate Control Claims

Several of the issues raised by Plaintiffs' corporate control claims were addressed by Chief Judge Pointer in *In re Silicone Gel Breast Implants Products Liability Litigation*, 837 F.Supp. 1128 (N.D.Ala.1993). Although some of the facts that are before this Court were not before Chief Judge Pointer at the time of that opinion, much of his legal analysis is applicable to the instant motions. For the reasons that Judge Pointer granted the motions before him and for the additional reasons referred to below, this Court holds that Dow Chemical and Corning are entitled to summary judgment on Plaintiffs' corporate control claims.

■■■ First, the Plaintiffs cannot, given the undisputed facts, "pierce the corporate veil" to reach Dow Chemical and Corning. Under Michigan law,[2] a corporation's separate iden-

---

1. For a more detailed discussion of the role of Vitek, Inc., see this Court's opinion reported at 872 F.Supp. 1019 (D.Minn.1995).

2. Most, if not all, states would apply Michigan law to determine the extent to which the shareholders of a Michigan corporation could be held liable for the alleged torts of that corporation.

*See, e.g., Moran v. Harrison*, 91 F.2d 310, 313 (D.C.Cir.), *cert. denied*, 302 U.S. 740, 58 S.Ct. 142, 82 L.Ed. 572 (1937); *Paper Prods. Co. v. Doggrell*, 195 Tenn. 581, 261 S.W.2d 127, 129 (1953); *Morrow v. Vaughan–Bassett Furniture Co.*, 173 Va. 417, 4 S.E.2d 399, 401 (1939); *Johansen v. St. Louis Union Trust Co.*, 345 Mo.

tity will only be disregarded where the subsidiary has become "a mere instrumentality" of its parent or parents. *Maki v. Copper Range Co.,* 121 Mich.App. 518, 328 N.W.2d 430, 433 (1982).

■ In this case, there are no facts that would demonstrate that Dow Corning is a "mere instrumentality" of either Dow Chemical or Corning. Dow Corning is a "Fortune 500" company, that is, one of the 500 largest corporations in the United States according to *Fortune* magazine. The undisputed evidence shows that Dow Corning and its parents have observed corporate formalities throughout Dow Corning's more than fifty years of existence, that Dow Corning has two billion dollars in assets, that it has an asset-to-debt ratio of almost two to one, and that it has paid regular dividends throughout most of its years. Given these facts, the Court holds as a matter of law that the Plaintiffs cannot pierce Dow Corning's corporate veil.

■ Second, Plaintiffs' "joint venture" claims are unsupported by the facts. They contend that Dow Chemical and Corning have fostered the public perception that Dow Corning is a joint venture of those two companies. In the alternative, they assert that Dow Corning actually is a joint venture of Dow Chemical and Corning. As Chief Judge Pointer noted in his opinion, Dow Corning is a "joint venture" of Dow Chemical and Corning in a non-legalistic use of the term. Most jurisdictions, however, will not find that a joint venture exists in the legal sense unless the parties involved have agreed to share both profits and losses. *In re Silicone Gel Breast Implants Prods. Liab. Lit.,* 837 F.Supp. 1128, 1138–39 (N.D.Ala.1993). There is no evidence of such an agreement between Dow Chemical and Corning. They specifically elected to do business together

via the corporate form, a method that is viewed as distinct from a joint venture. *Id.* at 1139. Based on these undisputed facts, the Court holds as a matter of law that Dow Chemical and Corning are entitled to summary judgment on all of Plaintiffs' joint venture claims as well as the other corporate control claims.

## B. Direct Liability

In their opposition to Dow Chemical's and Corning's Motions for Summary Judgment, Plaintiffs rely primarily on several theories of direct liability. Having carefully reviewed the arguments and evidence submitted by the Plaintiffs in support of these theories, the Court concludes that no genuine issues of fact remain as to any of Plaintiffs' claims against Dow Chemical and Corning and that those Defendants are entitled to summary judgment for the reasons set forth below.[3]

### 1. Fraudulent Concealment and Misrepresentation

One of Plaintiffs' central claims against Dow Chemical is fraudulent concealment or misrepresentation.[4] Plaintiffs recognize that in order to prevail on this claim, they must establish the following elements:

> (1) Deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak; (2) That the defendant acted with scienter; (3) An intent to induce plaintiff's reliance upon the concealment; (4) Causation; and (5) Damages resulting from the concealment.

*Nicolet, Inc. v. Nutt,* 525 A.2d 146, 149 (Del. 1987). They also note that "[g]enerally, there is no duty to disclose a material fact or opinion unless a defendant had a duty to speak." *Id.* (Pltfs.Mem.Opp. at 16–17.)

135, 131 S.W.2d 599, 603 (1939); *Good v. Starker,* 207 Wis. 567, 242 N.W. 204, 206 (1932); *Woodward v. Sonnesyn,* 162 Minn. 397, 203 N.W. 221, 222, *cert. denied,* 269 U.S. 567, 46 S.Ct. 25, 70 L.Ed. 415 (1925).

3. This conclusion is reached regardless of which state's law is applied. Based on its review of the law, the Court is convinced that the fundamental flaws present in Plaintiffs claims would prevent recovery in every state.

4. Plaintiffs do not appear to argue that Corning should be held liable for fraud/misrepresentation or under any other theory of direct liability, with the exception of the trademark licensors theory and the negligent performance of an undertaking. Although most of the Court's discussion of the assertions of direct liability focuses on Dow Chemical, the Court here wishes to clarify that no evidence has been brought forth by Plaintiffs that would raise genuine issues of material fact regarding Corning's liability under any theory.

According to Plaintiffs, Dow Chemical had a duty to reveal its knowledge regarding the dangers of using silicone within the human body. Dow Chemical responds that there is no evidence it misrepresented or concealed the dangerousness of silicone and that it had no duty to disclose the information it had regarding silicone. Dow Chemical also points out that there are hundreds of thousands of kinds of silicone compounds, commonly referred to as silicones, each with different characteristics. There is no evidence, it adds, that Dow Chemical even knew which particular silicones were used in TMJ implants manufactured by Dow Corning.

In asserting that Dow Chemical had a duty to disclose information regarding the toxicity of silicones, Plaintiffs first argue that Dow Chemical had a "duty to correct" information it had previously released regarding the safety of silicones for use in human implants. In 1948 and 1950, Dow Chemical scientists published two articles about the safety of silicones. (*See* Pltfs.Exhs. 54 & 56.) In these articles, the authors examined health and safety issues involved in the handling of silicone materials by workers. Plaintiffs contend that Dow Chemical should have published updates to these articles when later research revealed that some silicones were bioactive and inappropriate for certain medical uses.

■ Dow Chemical correctly points out that to adopt Plaintiffs' position would impose a heavy burden on scientists. Research that lays the basic groundwork in any scientific field is nearly always refined with time by subsequent discoveries. Many hypotheses are later determined to be inaccurate. This is the natural evolution of science. The law does not require a scientist who has published research to monitor all subsequent developments in the field and then to publish corrections when the conclusions from the original research prove to be wrong or incomplete.

Another flaw in Plaintiffs' "duty to correct" approach is that the 1948 and 1950 articles did not make any representations that silicones were safe or inert when used in medical implants. Those articles could not possibly have made any representation about the safety of silicones for use in TMJ implants, which had not even been invented at the time the articles were published.

Dow Chemical maintains that, in any event, it met any "duty to correct" because both Dow Chemical and Dow Corning made public all knowledge they had regarding bioactive silicones. It points out that when research revealed that Dow Corning 555 fluid and a compound called 2,6–cis posed certain health risks, Dow Chemical published its findings. (Dow Chemical's Reply Mem. at 46.) Plaintiffs have cited no facts that contradict Dow Chemical's assertions on this issue.

Plaintiffs cite § 551(2)(c) of the *Restatement (Second) of Torts*, which declares that one party to a business transaction is under a duty to disclose when "subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so." This provision does not apply to the circumstances before the Court in this motion. Section 551 "accords liability for nondisclosure only if the parties are engaged in a business transaction or stand in a fiduciary relationship." *Chrysler Credit Corp. v. First Nat'l Bank & Trust Co.,* 746 F.2d 200, 207 (3rd Cir.1984). Dow Chemical was not involved in a business transaction with Plaintiffs, and it certainly did not have a fiduciary relationship with them.

■ In further support of their position that Dow Chemical had a duty to disclose, Plaintiffs offer the related argument that such a duty exists under the "superior knowledge" theory. (Pltfs.Mem.Opp. at 17.) This principle imposes a duty to speak when one party has superior knowledge to the other party. Courts have generally applied this rule, however, only when 1) parties enter into a contract or other transaction with each other; 2) one party has superior knowledge not readily available to the other; and 3) the party with superior knowledge is aware, but does not point out, that the other is acting in reliance on an erroneous belief with respect to facts relating to the transaction. *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1417 n. 7 (3rd Cir.1993); *Aaron Ferer & Sons, Ltd. v.*

*Chase Manhattan Bank, N.A.,* 731 F.2d 112, 123 (2d Cir.1984). The theory does not apply to persons not directly involved in the transaction. In this case Dow Chemical did not manufacture or sell TMJ implants or otherwise interact with Plaintiffs; therefore, it had no duty to relate its allegedly superior knowledge to Plaintiffs.

■ Although Plaintiffs assert that Dow Chemical deliberately concealed or misrepresented facts relating to the safety of silicones for medical implants, they simply have not submitted any evidence that would support this allegation. Because Plaintiffs cannot meet the first element of their fraud claims, that is, evidence of deliberate concealment by Dow Chemical or Corning of a material past or present fact or silence in the fact of a duty to speak, Dow Chemical is entitled to summary judgment on those claims.

■ Plaintiffs also fail to meet their burden with respect to the other elements of a fraud claim. They have not pointed to any facts that could lead a juror to find that Dow Chemical's alleged misrepresentations and omissions were made with the intent to convince Plaintiffs to purchase Dow Corning's TMJ implants. In order for misrepresentations or omissions to be fraudulent, they must be made with the intent to spur the other party to action. *Piekarski v. Home Owners Sav. Bank, F.S.B.,* 956 F.2d 1484, 1493 (8th Cir.1992) (applying Minnesota law); *Mills v. Damson Oil Corp.,* 931 F.2d 346, 349 (5th Cir.1991) (under Mississippi law, plaintiffs must show by clear and convincing evidence intent that falsity be acted on by victim); *Abboud v. Michals,* 241 Neb. 747, 491 N.W.2d 34, 41 (1992); *Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232, 1236 (1992); *Hi-Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 247 N.W.2d 813, 816 (1976); *Gold v. Los Angeles Democratic League,* 49 Cal. App.3d 365, 122 Cal.Rptr. 732, 738 (1975). Plaintiffs have introduced no evidence that the alleged misrepresentations by Dow Chemical were made in an attempt to induce Plaintiffs to purchase TMJ implants. Mere bare bones allegations of a global plan to increase sales are insufficient.

■ Evidence is also absent on the element of reliance. There is no evidence that any of the Plaintiffs or their physicians relied on any statements or omissions by Dow Chemical. Where a plaintiff fails to introduce affirmative evidence of reliance, a motion for summary judgment is properly granted. *Bormann v. Applied Vision Sys., Inc.,* 800 F.Supp. 800, 811–12 (D.Minn.1992); *see also Wittekamp v. Gulf & Western, Inc.,* 991 F.2d 1137, 1143 (3rd Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 309, 126 L.Ed.2d 256 (1993) (judgment as a matter of law appropriate where no evidence of reliance); *McMullen v. Joldersma,* 174 Mich. App. 207, 435 N.W.2d 428, 431 (1988) (same); *Little v. Gillette,* 218 Neb. 271, 354 N.W.2d 147, 153 (1984) (directed verdict was proper where no evidence of reliance on statements). Because Plaintiffs have not shown evidence of reliance, Dow Chemical is also entitled to summary judgment on their claims of negligent misrepresentation. *Piekarski v. Home Owners Sav. Bank, F.S.B.,* 956 F.2d 1484, 1495 n. 17 (8th Cir.1992) (failure to prove justifiable reliance fatal to claims of negligent and reckless misrepresentation).

Finally, Plaintiffs have not met their burden on the issue of proximate cause. "False representations must be the proximate cause of the damage before a party may recover." *Luscher v. Empkey,* 206 Neb. 572, 293 N.W.2d 866, 869 (1980). *See also Piekarski,* 956 F.2d at 1493. In summary, the movants are entitled to summary judgment on Plaintiffs fraudulent concealment and misrepresentation claims.

## 2. Aiding and Abetting Tortious Conduct

Relying on § 876(b) of the *Restatement (Second) of Torts,* Plaintiffs assert liability against Dow Chemical for aiding and abetting Dow Corning's alleged tortious conduct. Section 876(b) states that one person may be liable for the torts of another if the first person "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."

In *Halberstam v. Welch,* 705 F.2d 472, 477 (D.C.Cir.1983), the court set forth three elements for aiding-abetting liability:

(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.

For the purposes of the instant motions only, the Court assumes that the Plaintiffs can meet the first element. The second and third elements "vary inversely relative to one another and where . . . the evidence of substantial assistance is slim, the requirement of knowledge or scienter is enhanced accordingly." *Metge v. Baehler,* 762 F.2d 621, 624 (8th Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). A plaintiff seeking to demonstrate aiding-abetting liability must also show proximate cause, a " 'substantial causal connection between the culpable conduct of the alleged aider and abettor and the harm to the plaintiff[,]' . . . or a showing that 'the .encouragement or assistance is a substantial factor in causing the resulting tort[.]' " *Metge,* 762 F.2d at 624 (citations omitted).

Determining what constitutes "substantial assistance" can be a complicated endeavor. *Halberstam* noted that courts commonly employ five factors, which are referred to in § 876 of the *Restatement.* These are: "the nature of the act encouraged; the amount [and kind] of assistance given; the defendant's absence or presence at the time of the tort; his relation to the tortious actor; and the defendant's state of mind." *Halberstam,* 705 F.2d at 483–84 (brackets in original). *Halberstam* added a sixth factor, the "duration of the assistance provided." *Id.* at 484.

 Applying these factors to the instant case, the Court begins by considering the nature of the act allegedly assisted and "what aid might matter." *Id.* at 484. By the time it began manufacturing TMJ implants, Dow Corning was a well-established company. Its researchers certainly interacted, on occasion, with scientists working for Dow Chemical. There is no evidence, however, that Dow Corning was "heavily dependent" upon Dow Chemical for any assistance regarding the manufacture of TMJ implants. *Cf. id.* at 488.

Dow Corning was capable of designing, producing, and marketing the implants on its own, and the evidence suggests that Dow Corning did just that.

This leads to the second factor, the amount of assistance given by Dow Chemical to Dow Corning. Plaintiffs place much emphasis on the research assistance and facilities provided by Dow Chemical to Dow Corning. There is no evidence, however, that Dow Chemical provided any such cooperation with the goal of encouraging Dow Corning to produce TMJ implants or that such assistance was integral to Dow Corning's ability to produce the implants.

The third factor relates to the defendant's absence or presence at the time of the tort. This factor is somewhat complicated by the fact that the underlying tort allegedly committed by Dow Corning did not occur in a brief time period but instead over many years. During that time, certain facilities used by Dow Corning and Dow Chemical were located in close physical proximity. Dow Chemical denies, however, that it had any knowledge regarding the manufacture of the implants, and Plaintiffs have failed to produce evidence that controverts this denial. Thus, even though Dow Chemical's researchers may have shared laboratories or other facilities and equipment, nothing in the record indicates that Dow Chemical "witnessed" the tort allegedly committed by Dow Corning.

Considering the fourth factor, the *Halberstam* court observed that "the intimacy of the relationship between the wrongdoer and the defendant may also lead a court to be wary of inferring assistance warranting joint liability from supportive activities." 705 F.2d at 484. For example, when considering a wife's actions in watching her husband assault someone, a court should be careful "so as not to infuse the normal activities of a spouse with the aura of a concerted tort." *Id.* In the instant case, this Court must take the same cautious eye to the facts before it. Dow Chemical and Corning naturally wish to be supportive of their wholly owned subsidiary Dow Corning, just as a person wishes to support a spouse. This does not mean that such support should be cast as aiding and

abetting the torts of the spouse or, in this case, the subsidiary. Unless the support amounts to substantial assistance, there is no basis on which to find aiding-abetting liability.

Fifth, Dow Chemical's "state of mind" is relevant to a determination of its liability as an aider-abettor. One of Plaintiffs' contentions is that the studies of biological activity of silicones undertaken by Dow Chemical amounted to substantial assistance. No evidence has been uncovered, however, that could show that those studies were done with knowledge of an alleged scheme to market the TMJ implants or with the intent of advancing the sale by Dow Corning of any hazardous products.

Another of Plaintiffs' arguments is that Dow Chemical knew Dow Corning was selling dangerous implants but that it did not take action to stop this behavior. "[I]n the absence of a duty to act or disclose, an aider-abettor case predicated on inaction of the secondary party must meet a high standard of intent." *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). As stated above, the facts submitted by Plaintiffs would not allow a reasonable juror to conclude that Dow Chemical had knowledge of the dangers posed by the implants or even what particular materials were used in their construction, much less that Dow Chemical was "one in spirit with the [alleged tortfeasor]." *Halberstam*, 705 F.2d at 484.

The sixth factor applied by the *Halberstam* court was the duration of the assistance provided. Although the relationship between Dow Chemical and Dow Corning is without doubt a long-standing one, there is no evidence that Dow Chemical engaged in any long-term interaction with Dow Corning concerning the TMJ implants.

The undisputed facts demonstrate that Dow Chemical did not knowingly provide substantial assistance to Dow Corning in the alleged commission of the underlying tort.

Plaintiffs' aiding-abetting claims therefore fail as a matter of law.

### 3. Coconspiracy

■ Plaintiffs also maintain that a jury could find that Dow Chemical conspired with Dow Corning to conceal and misrepresent the biological hazards of implanted silicones. To survive a motion for summary judgment on a conspiracy claim, a plaintiff must allege specific facts that would tend "to show agreement and concerted action. Conclusory allegations are insufficient." *Anderson v. Douglas County*, 4 F.3d 574, 578 (8th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Unless there is "some mutual mental action coupled with an intent to commit the act which results in injury," there is no conspiracy. *Dixon v. Reconciliation, Inc.*, 206 Neb. 45, 291 N.W.2d 230, 232 (1980). "Without the scienter, persons cannot conspire." *Id.*

■ None of the facts submitted by Plaintiffs could be viewed as tending to show an agreement between the movants and Dow Corning regarding TMJ implants. As the Court has stated above, there is no evidence that Dow Chemical had any knowledge about the risks involved in TMJ implants. Plaintiffs rely on the fact that Dow Chemical researched the biological hazards of silicones and provided that information to Dow Corning, yet there are no facts indicating that Dow Chemical knew which silicones were used in the implants, much less that Dow Chemical agreed with Dow Corning on any aspects of its TMJ implant business. As the Court has already detailed, there is no evidence that Dow Chemical concealed or misrepresented any knowledge it had regarding materials used in the implants received by Plaintiffs.

No genuine issues of material fact remain on Plaintiffs' civil conspiracy claims.[5] The Court grants the motions for summary judgment on those claims.

---

**5.** This analysis likewise precludes Plaintiffs' claims of concert of action. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983) (the two types of concert of action are conspiracy, "con-

certed action by agreement," and aiding-abetting, "concerted action by substantial assistance").

#### 4. Trademark Licensors Theory

Another theory of liability proposed by Plaintiffs is based on the fact that Dow Corning sold its TMJ implants using trademarks owned by Dow Chemical and Corning. This Court rejected a similar argument with respect to Defendant E.I. du Pont de Nemours in a previous ruling. *In re TMJ Implants Prods. Liab. Lit.*, 872 F.Supp. 1019, 1034 (D.Minn.1995). Plaintiffs' claims here are even weaker, for the implants sold by Dow Corning were marketed under the Silastic® brand name, which is owned by Dow Corning and not by the movants.

 The parties do not dispute that the name "Dow Corning" is a combination of two trademarks owned by Dow Chemical and Corning. Those companies contractually reserved the right to maintain the reputation of their trademarks by inspecting products associated with their names to assure that those items are of high quality. This does not mean, however, that, if those companies fail to police their trademarks, the law then imposes upon them liability in tort for products that the companies neither manufactured nor sold. Without proof of a greater undertaking by the trademark owner, no duty to third parties arises out of the trademark licensing agreements.

Although Plaintiffs cite § 400 of the *Restatement (Second) of Torts*, that provision is inapplicable to the case before the Court. Section 400 sets forth the "apparent manufacturer doctrine." It provides, "One who puts out as his own product a chattel manufacturer by another is subject to the same liability as though he were its manufacturer." *Restatement (Second) of Torts* § 400.

 Even if the Court assumes that this doctrine is a valid principle of law in the relevant states, a point which the movants contest, the apparent manufacturer doctrine does not apply when the defendants in question did not manufacture or otherwise participate in the chain of distribution of the product and the plaintiffs do not even contend that they believed that those defendants were in fact the manufacturers. *See Affiliated FM Ins. Co. v. Trane Co.*, 831 F.2d 153, 155–56 (7th Cir.1987) (doctrine does not apply unless the defendant represented to public that product it was putting out was its own). Moreover, the apparent manufacturer doctrine does not apply here because the name "Dow Corning" is itself a trademark owned by Dow Corning, not by Dow Chemical or Corning. *See Nelson v. Int'l Paint Co.*, 734 F.2d 1084, 1088 (5th Cir.1984) (where product does not bear defendant's name, § 400 does not apply).

Relying on *Kasel v. Remington Arms Co.*, 24 Cal.App.3d 711, 101 Cal.Rptr. 314 (1972); *Torres v. Goodyear Tire & Rubber Co.*, 163 Ariz. 88, 786 P.2d 939 (1990), and § 402A of the *Restatement (Second) of Torts*, the Plaintiffs expostulate that Dow Chemical and Corning could be found liable under the "stream of commerce" or "enterprise theory." (Pltfs.Mem.Opp.Summ.J. at 25.) The cases cited by Plaintiffs recognize that the goal behind § 402A was "to place the risk of loss on those in the chain of distribution of defective, unreasonably dangerous goods." *Torres*, 163 Ariz. at 91, 786 P.2d at 942. As the Court has already noted, the undisputed facts in this case show that Dow Chemical and Corning were not involved in the chain of distribution of Plaintiffs' TMJ implants. Here again, even if the Court assumes that the principle of law relied on by Plaintiffs would apply in the relevant states, the undisputed facts demonstrate that liability would not attain under that theory in this case.

#### 5. Negligent Performance of an Undertaking

Next, Plaintiffs advance the theory that Dow Chemical and Corning should be held liable under § 324A of the *Restatement (Second) of Torts*. That section provides as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Restatement (Second) of Torts* § 324A.

■ Plaintiffs argue that Dow Chemical undertook to render services to Plaintiffs when it entered into agreements with Dow Corning with respect to the use of Dow Chemical's trademarks. (Pltfs. Mem.Opp.Summ.J. at 28.) Plaintiffs cite no cases in which a trademark licensing agreement provided a basis for liability under § 324A, and the Court refuses to place this strained interpretation on the agreements in this case. In the trademark agreements, Dow Chemical undertook to do nothing more than protect its own intellectual property rights. It did not attempt to assure all purchasers of Dow Corning's products that those products would be free of all risk. Section 324A does not apply because it cannot be said that either Dow Chemical or Corning undertook "to render services to another" through its trademark agreements or through any other means.

### 6. Additional Claims

The Court holds that the additional claims of Plaintiffs not already discussed in detail likewise fail as a matter of law. Legally and factually, their claims against Dow Chemical and Corning that are based on state consumer protection laws and participation theory are unsupported. Plaintiffs have pointed to no acts by movants that would violate state consumer protection laws, and there is no evidence that Dow Chemical directly participated in the alleged tortious activities of Dow Corning.

Plaintiffs argue that Dow Chemical's relationship with Lepetit, a publicly-traded Italian company in which Dow Chemical owns a majority interest, raises a fact issue with respect to Dow Chemical's liability. Lepetit marketed implant materials, including those used in TMJ implants, in foreign countries, but never in the United States. As Dow Chemical correctly points out, these actions by a subsidiary provide no greater basis of liability than the actions of Dow Corning,

which is also a subsidiary of Dow Chemical. Plaintiffs do not allege that any of their implants were purchased from Lepetit. Any interaction between Dow Chemical and Lepetit could not have proximately caused any injuries suffered by these Plaintiffs.

■ Plaintiffs also urge the Court to deny Dow Chemical's motion on the grounds that the General Counsel for Dow Chemical allegedly signed false affidavits in the breast implant litigation that is pending before Chief Judge Pointer, discovery for which has been heavily relied upon by the parties in the TMJ jaw implants litigation. (Pltfs.Supp'l Mem.Opp. at 2–6.) Although these allegations are troubling if they are true, they are not a sufficient reason to deny Dow Chemical's Motion for Summary Judgment. The resolution of the claims relating to those discovery abuses is properly left to Judge Pointer, who has taken under advisement a motion for sanctions based on those alleged acts.

### IV. CONCLUSION

No genuine issues of material fact remain with respect to any of Plaintiffs' claims against Defendants Dow Chemical and Corning. Because those Defendants are entitled to judgment as a matter of law, the Court grants their motions pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court hereby directs the Clerk to enter judgment forthwith on all claims against Dow Chemical and Corning.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Dow Chemical Company's Motion for Summary Judgment is GRANTED;

2. Corning, Incorporated's Motion for Summary Judgment is GRANTED;

3. All of Plaintiffs' claims against Defendants Dow Chemical Company and Corning, Incorporated are DISMISSED WITH PREJUDICE; and

4. The Clerk shall enter judgment with respect to Defendants Dow Chemical Company and Corning, Incorporated in all cases consolidated for pretrial purposes under the caption above, including "tag-along" cases trans-

ferred to this Court subsequent to or simultaneously with the filing of this Memorandum and Order.