# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 95-2886
_____

In re:  Temporomandibular             *
Joint (TMJ) Implants Products         *
Liability Litigation                  *
_____        *
                                      *
Temporomandibular Joint (TMJ)         *
Implant Recipients,                   *   Appeal from the United States
                                      *   District Court for the
        Appellants,                   *   District of Minnesota.
                                      *
    v.                                *
                                      *
The Dow Chemical Company,             *
                                      *
        Appellees.                    *


_____

Submitted:  June 14, 1996

Filed:  May 16, 1997
_____

Before BOWMAN, JOHN R. GIBSON, and BEAM, Circuit Judges.
_____


BOWMAN, Circuit Judge.


    This is a products liability matter.  Plaintiffs, who are the
recipients of temporomandibular joint (TMJ) implants, prosthetic devices
used to correct TMJ disorders, seek to impose liability upon The Dow
Chemical Company (Dow Chemical) for injuries alleged to have been caused
by the implants.  The pretrial proceedings in these various personal injury
actions were consolidated in the District of Minnesota by the Judicial
Panel on Multidistrict

Litigation pursuant to 28 U.S.C. § 1407 (1994). See In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 844 F. Supp. 1553, 1554-55 (J.P.M.L. 1994). Plaintiffs appeal the final order of the District Court[1] granting summary judgment in favor of Dow Chemical. We affirm.

## I.

The TMJ connects the upper and lower jaw. A TMJ implant is a device that is surgically inserted to replace an improperly functioning TMJ. Plaintiffs allege that their implants deteriorated after implantation, causing, inter alia, surrounding jaw bone disintegration, serious autoimmune responses, and severe head and neck pain.

Dow Corning Corporation (Dow Corning), together with its subsidiary, Dow Corning Wright, manufactured and sold TMJ implants containing silicone.[2] Dow Chemical and Corning, Incorporated (Corning), each fifty percent owners of Dow Corning's stock, formed Dow Corning in 1943 to participate in the organosilicon compound industry. Plaintiffs do not allege that Dow Chemical ever manufactured, sold, or tested TMJ implants or supplied any component parts of or substances used in such implants. Instead, plaintiffs assert that Dow Chemical is liable because of its

---

[1]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

[2]Because Dow Corning has filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, it has not appeared in these proceedings. All nonbreast implant claims pending against Dow Corning have been transferred to the United States District Court for the Eastern District of Michigan, where Dow Corning filed its Chapter 11 petition. See Tort Claimants' Comm. v. Dow Corning Corp. (In re Dow Corning Corp.), 1996 WL 668567 (6th Cir. Nov. 18, 1996) (unpublished table decision reported at 103 F.3d 129).

alleged involvement in the research, testing, and development of silicone used in the TMJ implants.

Since Dow Corning's inception, Dow Chemical has performed a number of services for Dow Corning. Among Dow Chemical's services were approximately a dozen limited toxicology tests performed on a variety of silicone compounds from 1943 through the early 1970s. None of the tests was conducted to determine whether the specific compound tested could be used safely as a medical implant.[3]

Three Dow Chemical scientists, including Dr. V.K. Rowe, published two articles, one in 1948 and one in 1950, describing toxicological research performed on various silicones (none of which are alleged to be present in any TMJ implant). The 1948 article concluded that silicones as a group have a very low order of toxicity. However, the article warned of dangers associated with certain silicone compounds. Specific harmful effects included

---

[3]In fact, the only support found in the record for plaintiffs' assertion that Dow Chemical ever tested in any way any silicone compound actually used in any TMJ implant is a study published in 1972 by scientists at Dow Chemical. See Appellants' App. at 289-99. The study examined the effect of silicone injections on the reproductive systems of female rats and concluded that a number of the silicone compounds tested, including a low molecular weight silicone known as D4, were biologically active. Plaintiffs attempt to link D4 to silicone in TMJ implants by asserting that D4 serves as a basic building block in all silicone implants. However, even assuming the presence of D4 in TMJ implants, plaintiffs can point to no testing by Dow Chemical that could possibly form the basis for plaintiffs' tort claims. By publishing the study highlighting the dangers of D4, Dow Chemical obviously was not concealing the potential dangers of this compound, and absent evidence of further Dow Chemical studies concerning D4 or any other silicone compound allegedly contained in any TMJ implant, plaintiffs cannot establish an undertaking on the part of Dow Chemical to ensure the safety of any TMJ implant. Furthermore, plaintiffs have not shown that Dow Chemical knew that any of the specific silicone compounds tested would be contained in any TMJ implant, or any other medical implant for that matter.

irritation, inflammation, edema, and necrosis. The 1950 article concluded that no adverse effects were found in rats administered certain commercial silicones in their diets.

In 1967, Dr. Rowe attended a meeting at Dow Corning discussing the toxicology of various Dow Corning products, including Silastic® rubber dental liner and dental impression material. The concept of a permanent tooth implant was discussed. Before any long-term studies were to be carried out, preliminary studies on animals were to be performed. There is no indication that Dr. Rowe participated in this discussion or that TMJ implants ever were discussed.

Dow Corning established its own toxicology department within Dow Chemical's facilities in 1968, hiring a former Dow Chemical employee to head the department. In 1971, Dow Corning's toxicology laboratory moved into its own space in a Dow Corning building. Four years later, the two companies signed an agreement giving Dow Corning the use of various Dow Chemical trademarks and trade names. In return, Dow Chemical retained the right to inspect Dow Corning's products to protect the integrity of its trademarks and trade names.

Plaintiffs sued both Dow Chemical and Corning for damages resulting from implant-related injuries. The District Court granted summary judgment in favor of both defendants in all of the consolidated cases, rejecting plaintiffs' theories of corporate control and direct liability. In re TMJ Implants Prods. Liab. Litig., 880 F. Supp. 1311 (D. Minn. 1995). First, plaintiffs claimed that the District Court should disregard Dow Corning's status as a separate corporate entity and allow a lawsuit against its parent companies, Dow Chemical and Corning, for the alleged torts of Dow Corning, or at least find the existence of a joint venture between Dow Chemical and Corning. The court concluded as

-4-

a matter of law that plaintiffs could not "pierce the corporate veil" to reach Dow Chemical and Corning and that no joint venture in the legal sense existed between Dow Chemical and Corning.[4]  See id. at 1315-16.  Second, plaintiffs claimed that Dow Chemical is directly liable under a variety of theories, including fraud, aiding and abetting tortious conduct, conspiracy, a trademark licensing theory, negligent performance of an undertaking, violation of state consumer protection laws, and direct participation in the alleged tortious activities of Dow Corning.  The District Court determined that no genuine issues of material fact existed as to any of plaintiffs' direct liability claims and that Dow Chemical was entitled to judgment as a matter of law.  See id. at 1322.

In this appeal, plaintiffs argue that the District Court prematurely granted summary judgment.  Plaintiffs' contentions primarily concern the relationship between this litigation and the consolidated breast implants litigation in Alabama.  In re Silicone Gel Breast Implants Prods. Liab. Litig., 887 F. Supp. 1455 (N.D. Ala. 1995) [hereinafter In re Breast Implants].  Plaintiffs also argue that based on the record there are genuine issues of material fact which preclude a grant of summary judgment on their claims of negligent performance of an undertaking, aiding and abetting tortious conduct, fraudulent concealment and misrepresentation, and conspiracy.

---

[4]Plaintiffs do not appeal these corporate control rulings, and they asserted direct liability claims against only Dow Chemical; Corning thus is not a party to this appeal.

## II.

A transferee court in federal multidistrict proceedings has the authority to enter dispositive orders terminating cases consolidated under 28 U.S.C. § 1407 (1994). See Temporomandibular Joint (TMJ) Implant Recipients v. E.I. Du Pont De Nemours (In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.), 97 F.3d 1050, 1055 (8th Cir. 1996) [hereinafter E.I. Du Pont].

Federal law governs our review of whether the District Court prematurely granted summary judgment. See, e.g., Wallace v. Dorsey Trailers Southeast, Inc., 849 F.2d 341, 344 (8th Cir. 1988). The substantive claims, on the other hand, are creatures of state law, and the transferee court--and by extension this Court--ordinarily must apply the state law that would have been applied in an individual case had the case not been transferred for consolidation. See E.I. Du Pont, 97 F.3d at 1055. Here, however, the parties have not informed the Court of any difference in the applicable state laws, nor have they provided any choice-of-law analysis. Instead, they have based their arguments on generally applicable statements of the law, and have not disagreed as to the content of those statements. Accordingly, we take these generally applicable statements of substantive law as providing the legal standards that govern our review of plaintiffs' substantive claims. We apply, of course, the established summary judgment principles, as did the District Court.

## III.

We first address plaintiffs' concerns about the timing of the summary judgment. These concerns center around Dow Chemical's use

of In re Breast Implants.  In 1993, the district court in In re Breast Implants granted an interlocutory summary judgment to Dow Chemical in a suit brought by the recipients of silicone gel breast implants.  837 F. Supp. 1128, 1142 (N.D. Ala. 1993).  Many of the factual and legal issues in the breast implants litigation were similar, if not identical, to the issues in the present TMJ implants litigation.  Accordingly, plaintiffs in the TMJ litigation were directed to the breast implants litigation depository[5] for most of the discovery sought, and discovery was to be coordinated with discovery in the breast implants litigation.  All discovery was permitted only by leave of court.  Not surprisingly, Dow Chemical relied heavily on the holdings and reasoning of In re Breast Implants to support its motion for summary judgment.

The District Court issued its order in the present consolidated TMJ implants cases granting summary judgment to Dow Chemical on March 31, 1995, but final judgment was not entered at that time.  See In re TMJ Implants, 880 F. Supp. at 1322.  On April 25, 1995, the court in In re Breast Implants vacated its order granting summary judgment to Dow Chemical on the plaintiffs' direct liability claims based on evidence acquired subsequent to the entry of that order.  See In re Breast Implants, 887 F. Supp. at 1456.  That court held that on the evidence then before it a jury could find that Dow Chemical, as a consequence of its testing of silicone, engaged in a negligent undertaking and therefore was directly liable to recipients of silicone gel breast implants under the laws of at least some states.[6]  Id. at 1460-62.  In the present

---

[5]The document depository was established by the court in the breast implants litigation for litigants in any federal or state case involving silicone implant product liability.

[6]After concluding that summary judgment was improper as to the negligent undertaking claim, the district court in In re Breast Implants found it unnecessary to address plaintiffs' other direct liability theories.  887 F. Supp. at 1462.

litigation, on June 13, 1995, the District Court denied plaintiffs' motion to vacate and deny summary judgment as to Dow Chemical and granted Dow Chemical's motion for the entry of final judgment.

Plaintiffs contend that the District Court abused its discretion in declining to vacate its order granting summary judgment in this case. Plaintiffs argue that before the court in In re Breast Implants vacated summary judgment, Dow Chemical asserted that the factual and legal issues surrounding Dow Chemical's summary judgment motion in this case were identical to those already adjudicated in its favor in the breast implants litigation. Plaintiffs further argue that after summary judgment in the breast implants litigation was vacated, Dow Chemical reversed direction, claiming that In re Breast Implants should not affect the TMJ litigation because breast implant silicone and TMJ implant silicone are different. Moreover, plaintiffs contend that because of Dow Chemical's reliance on the breast implants litigation, Dow Chemical was able to avoid discovery in the present case concerning its role in the research and development of silicone, and it avoided discovery on the differences, if any, that exist between breast implant silicone and TMJ implant silicone. Without this discovery, plaintiffs argue, the grant of summary judgment was premature.

A trial court's determination that a claim is ripe for summary judgment is reviewed for abuse of discretion. See, e.g., Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993). Discovery does not have to be completed before a court can grant summary judgment, id. (citing Fed. R. Civ. P. 56), but summary judgment is proper only after the nonmovant has had adequate time for discovery, see Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). Federal Rule of Civil Procedure 56(f) allows a party defending against a summary judgment motion to request a court to postpone a decision until completion of adequate discovery.  If a party opposing a summary judgment motion does not seek shelter under Rule 56(f) or otherwise ask for a continuance, a court generally does not abuse its discretion in granting summary judgment based on the record before it.  See <u>Wallace</u>, 849 F.2d at 344 (holding that entry of summary judgment was not premature in view of nonmovants failure to take advantage of Rule 56(f) or ask the court for any kind of continuance); <u>King v. Cooke</u>, 26 F.3d 720, 726 (7th Cir. 1994) ("[W]hen a party does not avail himself of relief under Rule 56(f), it is generally not an abuse of discretion for the district court to rule on the motion for summary judgment."), <u>cert. denied</u>, 115 S. Ct. 1373 (1995).

In addressing plaintiffs' contentions that the timing of the grant of summary judgment was unfair, we note that plaintiffs mischaracterize Dow Chemical's position in the District Court and unduly minimize the role of the District Court.  In referring to the breast implants litigation, Dow Chemical argued that the court should not discount the analysis in <u>In re Breast Implants</u> merely because that case involved breast implants and this case involved TMJ implants.  Plaintiffs have turned this valid contention on its head, reworking Dow Chemical's argument to be that because this too is a silicone implant case, the results must be the same.  However, neither plaintiffs nor Dow Chemical elected to rely solely on the decision in <u>In re Breast Implants</u>; both parties marshalled evidence to support their positions regarding Dow Chemical's motion for summary judgment.  Dow Chemical simply analogized the breast implants litigation to the TMJ implants litigation in support of its motion.  This does not estop Dow Chemical from pointing out distinctions between the breast implants case and the present case.

Furthermore, the District Court did not rely on the opinion in In re Breast Implants as heavily as plaintiffs contend. The District Court expressly relied on reasoning in In re Breast Implants only when discussing the corporate control claims, see In re TMJ Implants, 880 F. Supp. at 1315, with respect to which plaintiffs raise no issue in this appeal. In the portion of the District Court's opinion addressing plaintiffs' direct liability claims, the court concluded, after "[h]aving carefully reviewed the arguments and evidence," that no genuine issues of material fact exist as to any of plaintiffs' claims against Dow Chemical. Id. at 1316. The court made an independent decision based on its own analysis of the record; it did not treat the initial opinion in the breast implants litigation as determinative of the summary judgment question in this case.

Moreover, neither before nor after the Alabama district court's reversal of field in the breast implants litigation did plaintiffs make use of Federal Rule of Civil Procedure 56(f), which allows a party to request a delay in granting summary judgment until completion of further discovery. Not only did plaintiffs never file an affidavit pursuant to Rule 56(f),[7] but also they

---

[7]Plaintiffs' Reply Brief states that Dow Chemical's counsel indicated on August 18, 1994 that filing a Rule 56(f) affidavit was unnecessary. See Reply Br. at 5. Irrespective of this contention, in a September 2, 1994 letter to the District Court (a copy of which was sent to plaintiffs' counsel), Dow Chemical unequivocally stressed its desire to have plaintiffs file a Rule 56(f) motion. See Reply App. at 8. Plaintiffs also contend that they did not know that discovery on the type of silicone contained in TMJ implants was necessary until Dow Chemical made this an issue in attempting to distinguish In re Breast Implants, well after the court's September 30, 1994 deadline for filing Rule 56(f) affidavits. However, as noted in the opening line of plaintiffs' brief, "This case concerns the role of Dow Chemical . . . in the design and testing of the silicone used in [TMJ] implants." Appellants' Br. at 1. There being thousands of different silicone compounds, each with varying characteristics, plaintiffs should have known early in this litigation that it would be necessary to specifically identify the type of silicone in TMJ implants and to tie that type of silicone to testing performed by Dow Chemical and not simply rest on the notion that silicone is silicone.

never filed a motion for a continuance or to compel discovery.[8]  Because plaintiffs failed to take appropriate action to delay the entry of summary judgment and obtain additional discovery, the entry of summary judgment was not premature and did not constitute an abuse of the District Court's discretion.  See Humphreys, 990 F.2d at 1081 (finding no abuse of discretion in court's grant of summary judgment where party failed to file any affidavit specifying why further discovery is necessary); Cassidy, Inc. v. Hantz, 717 F.2d 1233, 1235 (8th Cir. 1983) (per curiam) (holding that appellant cannot complain of inadequate opportunity for discovery where it did not request a continuance to conduct further discovery or state by affidavit why essential facts justifying opposition to summary judgment are unavailable).  Plaintiffs made a conscious gamble that their case as presented was sufficient to avoid summary judgment and cannot now complain of inadequate discovery.  See Tr. of Hr'g on Mot. for Summ. J., Jan. 27, 1995, Appellants' App. at 847 (Counsel for plaintiffs stated that

---

[8]In a May 25, 1995 letter, plaintiffs asked the District Court to wait on issuing a final ruling until plaintiffs' counsel had obtained certain Food and Drug Administration (FDA) documents. Appellants' App. at 897.  While United States v. Birchem, 100 F.3d 607, 609 (8th Cir. 1996), indicates that asking for a delayed ruling may suffice to preserve on appeal an argument of inadequate opportunity to conduct discovery even absent a Rule 56(f) affidavit, a court does not necessarily abuse its discretion by granting summary judgment in the face of such a requested delay. See Bryant v. Ford Motor Co., 886 F.2d 1526, 1534 (9th Cir. 1989) (stating that Rule 56(f) affidavit is not always necessary to raise discovery issue, but noting that the absence of a formal request for a continuance is relevant as to whether a district court abuses its discretion in ruling on a summary judgment motion without waiting for further discovery), cert. denied, 493 U.S. 1076 (1990).

"[Plaintiffs] are certainly not submitting a Rule 56(f) affidavit at this time. I think we have more than substantial evidence to survive the summary judgment motion."); Tr. of Hr'g on Continuing Mot. for Summ. J., May 24, 1995, Appellants' App. at 865 (Even after summary judgment in In re Breast Implants was vacated and Dow Chemical explicitly raised a distinction between silicone in TMJ implants and silicone in breast implants, counsel for plaintiffs still insisted that she "[did not] want to raise a discovery issue.").

Finally, the only discovery plaintiffs explicitly sought before the District Court was to rule on Dow Chemical's motion for final judgment--FDA documents pertaining to Dow Corning's attempt to gain FDA approval for its TMJ implant--is irrelevant to the direct liability claims against Dow Chemical.[9] In its May 25, 1995 letter to the District Court, plaintiffs asserted that the FDA documents would demonstrate that the silicone in TMJ implants is

---

[9]While assertions in plaintiffs' May 25, 1995 letter concerning the existence of these FDA documents and their purported contents are relevant as to whether summary judgment was prematurely granted, the documents themselves were never before the District Court. As a result, plaintiffs' January 3, 1996 motion to supplement the record on appeal with these FDA documents and a Silastic® Mammary Prosthesis informational brochure is denied, and these items will not be considered in addressing the merits of Dow Chemical's summary judgment motion. See Barry v. Barry, 78 F.3d 375, 379 (8th Cir. 1996) (noting that authority to supplement a record is rarely exercised and represents a narrow exception to the general rule that appellate courts consider only evidentiary materials before the trial court at the time summary judgment is granted).

Plaintiffs' February 12, 1996 motion to supplement the record on appeal with correspondence between the parties to this case and the District Court is granted. See United States v. Wilson, 102 F.3d 968, 971 n.3 (8th Cir. 1996) (granting motion to supplement the record on appeal to the extent that party seeks to supplement the record with material submitted to the district court).

equivalent to that contained in previously-marketed silicone products. Even if this contention were correct, plaintiffs never have asserted that the documents would show any contacts between Dow Chemical and Dow Corning sufficient to justify finding Dow Chemical directly liable to plaintiffs; thus, based on plaintiffs own assertions, these documents would not raise a genuine issue of material fact to create a jury question on any of plaintiffs' claims, and the District Court did not abuse its discretion in granting summary judgment without waiting for discovery of these documents.[10] See Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); United States v. Birchem, 100 F.3d 607, 610 (8th Cir. 1996) (noting that nonmovants' complaints of inadequate discovery were inconsequential where nonmovants failed to point to any factual disputes that would preclude summary judgment).

We conclude plaintiffs have failed to show that the District Court abused its discretion regarding the timing of its entry of summary judgment for Dow Chemical.

---

[10]Because the discovery sought in plaintiffs' May 25, 1995 letter did not demonstrate how postponement of the summary judgment ruling would enable plaintiffs to avoid summary judgment, the letter could not serve as the functional equivalent of a Rule 56(f) affidavit. See Humphreys, 990 F.2d at 1081 (stating that party invoking Rule 56(f)'s protection must demonstrate how postponement of ruling on a summary judgment motion will enable the nonmovant to show the existence of a genuine issue of material fact sufficient to avoid summary judgment). Therefore, we need not, and do not, decide whether strict adherence to Rule 56(f)'s affidavit requirement is necessary to preserve the argument on appeal that summary judgment was prematurely granted.

**IV.**

Plaintiffs argue that the record shows genuine issues of material fact with respect to several of their direct liability claims, and that summary judgment therefore should have been denied.  This Court reviews de novo the decision to grant summary judgment.  E.I. Du Pont, 97 F.3d at 1055.  Summary judgment is proper only when, viewing the evidence in the light most favorable to the nonmoving party, the record presents "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see McCormack v. Citibank, N.A., 100 F.3d 532, 537 (8th Cir. 1996).  After the moving party points out the absence of evidence to support the nonmoving party's case, the nonmoving party "must advance specific facts to create a genuine issue of material fact for trial."  Rolscreen Co. v. Pella Prods., Inc., 64 F.3d 1202, 1211 (8th Cir. 1995); see Celotex, 477 U.S. at 323-25.  A genuine issue of material fact exists if the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248-49.  However, the mere existence of a scintilla of evidence in favor of the nonmoving party's position is insufficient to create a genuine issue of material fact.  See Anderson, 477 U.S. at 252; Devine v. Stone, Leyton & Gershman, P.C., 100 F.3d 78, 81-82 (8th Cir. 1996), cert. denied, ___ U.S.L.W. ___ (U.S. May 12, 1997) (No. 96-1423); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (explaining that nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts").  After adequate time for discovery and upon proper motion, a court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to

-14-

that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Having reviewed carefully the parties' arguments and submissions, we conclude that no genuine issues of material fact exist as to any of plaintiffs' theories for holding Dow Chemical directly liable for plaintiffs' injuries.

**A.**

Plaintiffs assert that Dow Chemical is liable under section 324A of the Restatement (Second) of Torts for negligent performance of an undertaking. Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>    (a) his failure to exercise reasonable care increases the risk of such harm, or
>    (b) he has undertaken to perform a duty owed by the other to the third person, or
>    (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965). The District Court found that summary judgment should be granted on this claim because there is no evidence to show that Dow Chemical undertook to "'render services to another' through its trademark agreements or through any other means." See In re TMJ Implants, 880 F. Supp. at 1322.

An actor's specific undertaking of the services allegedly performed without reasonable care is a threshold requirement to

section 324A liability.  See, e.g., <u>Patentas v. United States</u>, 687 F.2d 707, 716 (3d Cir. 1982) ("The foundation of [324A] is that the defendant specifically has undertaken to perform the task that he or she is charged with having performed negligently."); <u>Lather v. Berg</u>, 519 N.E.2d 755, 766 (Ind. Ct. App. 1988) (recognizing that an actor must specifically undertake to perform the task charged).  The scope of this undertaking defines and limits an actor's duty under section 324A.  <u>See, e.g.</u>, <u>Homer v. Pabst Brewing Co.</u>, 806 F.2d 119, 121 (7th Cir. 1986).  Accordingly, courts have refused to impose liability under section 324A without a showing that the defendant undertook a duty with respect to the specific product that caused the injury.  <u>See</u> <u>Evans v. Liberty Mut. Ins. Co.</u>, 398 F.2d 665, 666-67 (3d Cir. 1968) (finding that employee could not recover under section 324A absent a showing that the defendant insurance carrier had undertaken to inspect plaintiff's employer's entire plant or the particular machine involved in the accident); <u>Blessing v. United States</u>, 447 F. Supp. 1160, 1189 (E.D. Pa. 1978) (same); <u>Artiglio v. Corning Inc.</u>, 56 Cal. Rptr. 2d 877, 883 (Cal. Ct. App. 1996) (noting that courts have refused to impose section 324A liability without a showing that defendant undertook responsibility with respect to the specific product that caused the injury), <u>review granted and opinion superseded by</u> 930 P.2d 399 (Cal. 1997), <u>and review limited by</u> 932 P.2d 755 (Cal. 1997) (limiting review to consideration of section 324A claim).[11]

The existence and nature of a legal duty are generally questions of law.  <u>See, e.g.</u>, <u>Homer</u>, 806 F.2d at 121-23 (analyzing existence and scope of duty under section 324A and holding that

_____

[11]We are aware of California Rules of Court 976(d) and 977(a), which limit the citation of opinions superseded by a grant of review by the California Supreme Court.  However, because these rules are not binding on this Court, we cite to <u>Artiglio</u> but note its status in the California courts.

defendant owed no duty as a matter of law); Smith v. Allendale Mut. Ins. Co., 303 N.W.2d 702, 710 (Mich. 1981) (interpreting section 324A and concluding that it is "for the court to determine what evidence is minimally necessary to establish the elements of a relationship on which tort liability may be premised").  However, at least one federal circuit court of appeals construing section 324A has held that the existence and scope of an undertaking, and thus the concomitant duty, are questions of fact for a jury.  See Pratt v. Liberty Mut. Ins. Co., 952 F.2d 667, 671 (2d Cir. 1992).  Regardless of whether the scope of a duty is deemed a question of law or a question of fact, if in viewing the evidence in the light most favorable to the plaintiff a reasonable jury could not find the existence of a duty, a court may find the absence of a duty as a matter of law.  See, e.g., Andrew v. State, 682 A.2d 1387, 1392 (Vt. 1996) (granting summary judgment for state when plaintiff failed to show a section 324A undertaking as a matter of law).

To establish liability under section 324A, plaintiffs must prove that Dow Chemical undertook a duty with respect to TMJ implants.  Plaintiffs argue that Dow Chemical assumed such a duty by undertaking to render services to Dow Corning through its trademark agreements with Dow Corning and through its silicone research and testing performed for Dow Corning and that Dow Chemical should have recognized that these services were necessary for the protection of plaintiffs.  Plaintiffs assert that the trademark agreements provided that Dow Chemical could examine the quality of Dow Corning's products as a condition for the use of Dow Chemical's trademarks and trade names.  Also, plaintiffs contend that Dow Chemical performed substantial silicone research and testing, at Dow Corning's request, that Dow Corning did not and could not perform.  Through these endeavors, plaintiffs argue, Dow Chemical undertook at least part of Dow Corning's duty to ensure the safety of Dow Corning's TMJ implants.

The record, however, contains no evidence to show that Dow Chemical undertook to render services to Dow Corning through its trademark agreements. A standard trademark agreement, in and of itself, does not establish an affirmative duty to inspect that could result in tort liability to third parties, see Mini Maid Servs. Co. v. Maid Brigade Sys., Inc., 967 F.2d 1516, 1520 (11th Cir. 1992) (asserting that "the licensor's duty to control a licensee's use of the licensor's own trademark cannot be blindly converted into a duty to prevent a licensee's misuse of another party's trademark"); In re Breast Implants, 887 F. Supp. at 1461, and nothing in the record suggests that these are other than standard trademark agreements. Plaintiffs can point to no evidence that Dow Chemical in fact inspected any Dow Corning product or provided any services to Dow Corning pursuant to these agreements. These agreements can only be viewed, then, as a vehicle for Dow Chemical to protect its intellectual property rights, and thus they do not represent an undertaking on the part of Dow Chemical to render services to another. Accordingly, these agreements do not trigger section 324A. See Roberson v. United States, 382 F.2d 714, 721 (9th Cir. 1967) (stating that actions solely to protect a defendant's own interests are not a basis for section 324A liability).

The silicone research allegedly performed by Dow Chemical at the request of Dow Corning also does not demonstrate an undertaking sufficient to impose liability on Dow Chemical under section 324A. For section 324A liability to attach, Dow Chemical must have specifically undertaken the task of ensuring the safety of Dow Corning's TMJ implants or of ensuring the safety of Dow Corning's entire array of silicone products. See Blessing, 447 F. Supp. at 1189 (recognizing that liability attaches only when defendant charged with negligent inspection undertakes to inspect the specific device causing the injury or the entire physical plant, of

-18-

which the specific device is a part); cf. Klein v. Council of Chem. Ass'ns., 587 F. Supp. 213, 224 (E.D. Pa. 1984) (granting defendant's motion to dismiss because by failing to identify any specific product that caused the injury, plaintiffs could not allege which product defendant tested and negligently failed to warn plaintiffs about). Plaintiffs contend that Dow Chemical undertook a duty with respect to all of Dow Corning's silicone products, but the record shows that Dow Chemical never tested the use of silicone in any medical implants and that Dow Chemical never was informed that any of the silicones it tested would be used in medical implants. Thus, examining the evidence in the light most favorable to plaintiffs, Dow Chemical's silicone research cannot form the basis of a section 324A undertaking for the protection of plaintiffs. See Artiglio, 56 Cal. Rptr. 2d at 884 (concluding that with an undisputed record that Dow Chemical did not test the safety of breast implants, "there is no basis upon which a reasonable inference can be drawn that Dow [Chemical] . . . in fact undertook to protect the eventual recipients of Dow Corning's products").

Plaintiffs can point only to Dow Chemical's performance of approximately a dozen tests involving silicone (but not its use in medical implants) performed over four decades at the request of Dow Corning, a 1967 meeting attended by a Dow Chemical employee in which the idea of a tooth implant was discussed, a 1948 and a 1950 article published by three Dow Chemical scientists discussing toxicological research on various silicones,[12] and a trademark

_____

[12]Plaintiffs contend that the 1948 article spawned the medical implant industry through its assertion that silicones are inert. The article, however, did not make such a broad assertion. The article concluded that "silicones . . . as a class are very low in toxicity," Appellants' App. at 428 (emphasis added), but specifically mentioned dangers associated with some of the silicones tested, Appellants' App. at 421-23. To find an undertaking based on this 1948 article would stretch the parameters of section 324A to impermissible bounds. Scientists engaged in preliminary research would be required to forever update their research, familiarize themselves with all the subsequent and previously inconceivable applications of their research, or face tort liability (here, almost fifty years after completion of the research). See Artiglio, 56 Cal. Rptr. 2d at 885 (rejecting a similar argument in breast implants litigation "because researchers

-19-

agreement allowing Dow Chemical to inspect the quality of Dow Corning's products. However, these Dow Chemical actions and Dow Corning's purportedly inadequate laboratory facilities are insufficient to establish an undertaking of such breadth and magnitude as to create a duty on the part Dow Chemical to ensure the safety of all of Dow Corning's silicone products. See In re New York State Silicone Breast Implant Litig., 632 N.Y.S.2d 953, 956-57 (Sup. Ct. 1995) (remarking that if court were to hold that Dow Chemical assumed a duty of care to all potential consumers of silicone products, "the duty imposed on Dow Chemical would be indeterminate and infinite"), aff'd, 642 N.Y.S.2d 681 (App. Div.), appeal dismissed, 676 N.E.2d 493 (1996).

Absent the threshold requirement of a specific undertaking of the services that form the basis for Dow Chemical's alleged duty under section 324A, plaintiffs' claim must fail, and we need not consider the remaining aspects of section 324A liability. The District Court did not err in granting summary judgment to Dow Chemical on plaintiffs' negligent undertaking claim.

**B.**

Plaintiffs also advance the theory that Dow Chemical is liable for aiding and abetting Dow Corning's tortious conduct under Restatement (Second) of Torts § 876(b) (1979). Secondary liability

---

would have no practical means of ascertaining the scope of their liability or making rational decisions regarding their research undertakings").

under section 876(b) attaches when one actor "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Courts have recognized three basic requirements for aiding and abetting liability: (1) the primary actor must commit a wrongful act that causes an injury; (2) the aider and abettor must be generally aware of his role in the overall wrongful activity at the time assistance is provided; and (3) the aider and abettor must knowingly and substantially assist the wrongful act. See, e.g., Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983).

In analyzing the present case under the standard outlined above, we assume, as the District Court did, that plaintiffs can establish a wrongful act on the part of Dow Corning. See In re TMJ Implants, 880 F. Supp. at 1319. We evaluate the second and third requirements in tandem--the stronger the evidence of Dow Chemical's general awareness of the alleged tortious activity, the less evidence of Dow Chemical's substantial assistance is required, and the stronger the evidence of substantial assistance, the less evidence of general awareness is required. See Metge v. Baehler, 762 F.2d 621, 624 (8th Cir. 1985), cert. denied, 474 U.S. 1057, 1072 (1986). In determining what constitutes "substantial assistance," the comments to section 876 of the Restatement provides a list of five factors: "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind." Restatement (Second) of Torts § 876(b), cmt. d. (1979). Additionally, the court in Halberstam provided a sixth factor, the duration of the assistance provided. See Halberstam, 705 F.2d at 484. Finally, the alleged substantial assistance must be the proximate cause of plaintiffs' harm. See Metge, 762 F.2d at 624.

Applying the foregoing legal standards to this case, the second requirement of section 876(b) clearly is not satisfied. The record is silent as to Dow Chemical's general awareness of both the hazards associated with TMJ implants and its supposed role in assisting Dow Corning's tortious conduct at the times the alleged assistance was provided. Plaintiffs contend that the knowledge requirement is satisfied by the transfers of various employees between Dow Chemical and Dow Corning and by the sale of silicone products by Dow Chemical subsidiaries. However, there is no indication that any information regarding the dangers of TMJ implants or any silicone implants was ever disseminated to Dow Chemical. Thus, plaintiffs have not established a genuine issue of material fact regarding Dow Chemical's general awareness of the dangers of TMJ implants. Cf. Anguiano v. E.I. Du Pont de Nemours & Co., 44 F.3d 806, 812 (9th Cir. 1995) (affirming summary judgment for defendant manufacturer of TMJ implant component on strict liability and negligent failure to warn claims because plaintiffs failed to raise genuine issue of fact with respect to defendant's knowledge of the hazards associated with TMJ implants even though defendant knew of component's use, the problems with this component in another load-bearing joint, and apprehension of implant's use by some practitioners).

The third aiding and abetting requirement is also unsatisfied. The record does not indicate that Dow Chemical either knew of or substantially assisted Dow Corning's alleged tortious activity. See Ezzone v. Riccardi, 525 N.W.2d 388, 398 (Iowa 1994) (stating that aiding and abetting liability cannot attach unless the primary party commits a wrong, the aider knows of the wrong, and the aider substantially assists the achievement of the primary violation), cert. denied, 115 S. Ct. 1958 (1995); National Westminster Bank v. Weksel, 511 N.Y.S.2d 626, 630 (App. Div.) (noting that plaintiff must establish that alleged aider and abettor acted with intention

of advancing the tortious activity), <u>appeal denied</u>, 513 N.E.2d 1307 (1987).

An analysis of the Restatement's substantial assistance factors supports this conclusion. First, we look at the nature of the act encouraged and analyze the import of Dow Chemical's aid. The record shows that Dow Corning designed, manufactured, and sold the TMJ implants on its own. Dow Corning was not "heavily dependent" on Dow Chemical in this endeavor. <u>Cf.</u> <u>Halberstam</u>, 705 F.2d at 488. Next, we examine the amount of assistance. A dozen random tests on silicone (none concerning its use for human implantation), use of some Dow Chemical facilities, attendance at a meeting in which the idea for a tooth implant was raised, and two articles (published nearly fifty years ago) on the toxicity of silicones is not significant assistance, especially when compared to the extensive efforts necessary to bring the idea for a TMJ implant to fruition. The third factor, the defendant's absence or presence at the time of the tort, indicates that although Dow Corning and Dow Chemical shared facilities during much of the period in question, there is no evidence that Dow Chemical knew of the testing or production of TMJ implants so as to be present during the tort's supposed commission. Dow Chemical's relation to Dow Corning is the fourth factor. As Dow Corning's parent, Dow Chemical obviously wants to be supportive; however, this generic desire to support, without more, is not sufficient to form the basis for aiding and abetting liability. <u>Cf.</u> <u>id.</u> at 488 (cautioning against overemphasis of relationship between defendant and tortfeasor, who were live-in companions, and noting uneasiness with finding civil liability on the basis of normal spousal support activities). The fifth factor is Dow Chemical's state of mind. There is no indication that Dow Chemical's actions were knowingly done for the purpose of assisting the design, production, or sale of TMJ implants, much less that Dow Chemical was "one in spirit

with" the alleged tortfeasor, Dow Corning.  <u>Id.</u> at 484.  The sixth factor applied by the court in <u>Halberstam</u> was the duration of the assistance provided.  Despite contacts between Dow Corning and Dow Chemical extending over four decades, evidence of any assistance by Dow Chemical concerning TMJ implants is nonexistent.  <u>See</u> <u>id.</u>  The record is barren of evidence from which a reasonable jury could find that Dow Chemical provided substantial assistance to Dow Corning's alleged tortious activity.

Because there is no genuine issue of material fact to create a jury question on plaintiffs' aiding and abetting tortious conduct claim, plaintiffs' claim must fail.  The District Court's grant of summary judgment on this claim must be sustained.

### C.

Plaintiffs contend that Dow Chemical is liable for material misrepresentations and omissions concerning the safety of silicone. Plaintiffs assert two fraud-based claims: (1) fraudulent concealment, based upon Dow Chemical's alleged duty to plaintiffs to correct its prior representations concerning the safety of silicone after discovering that silicone presented a health risk; and (2) fraudulent misrepresentation, based upon Dow Chemical's representations concerning the appropriateness of silicone use in medical implants after learning of silicone's health risks.

A fraudulent concealment claim requires:

    (1) Deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak;
    (2) That the defendant acted with scienter;
    (3) An intent to induce plaintiff's reliance upon the concealment;

> (4) Causation; and
>
> (5) Damages resulting from the concealment.

Nicolet, Inc. v. Nutt, 525 A.2d 146, 149 (Del. 1987).  Plaintiffs cannot establish the first element of a fraudulent concealment claim.  Plaintiffs allege that a duty to speak on the part of Dow Chemical arose because Dow Chemical published two articles asserting the inertness of silicone and subsequently learned that certain silicone polymers were not inert.  However, absent any relationship between plaintiffs and Dow Chemical, there can be no duty to speak.  See Moore v. Fenex, Inc., 809 F.2d 297, 303 n.2 (6th Cir.) (stating that court is aware of no case finding liability for fraudulent nondisclosure absent direct dealing with plaintiff), cert. denied, 483 U.S. 1006 (1987); Magna Bank v. Jameson, 604 N.E.2d 541, 544 (Ill. App. Ct. 1992) (asserting that "[t]here is no duty to speak absent a fiduciary or other legal relationship between the parties"), appeal denied, 612 N.E.2d 514 (Ill. 1993) (table); cf. Restatement (Second) of Torts, § 551(2)(c) (providing that a party to a business transaction is under a duty to disclose subsequently acquired information that will make untrue or misleading an earlier representation that was true or believed true when made).  Furthermore, there was nothing for Dow Chemical to correct.  The articles in question state that silicones as a class are inert, but do not include the broad assertion that all silicones are inert.  Additionally, plaintiffs can point to no evidence of active concealment or suppression of information relating to silicone implants on the part of Dow Chemical.  Because plaintiffs did not put forth evidence necessary to satisfy the first element of a fraudulent concealment claim, we need not go through the remaining elements.  See Celotex, 477 U.S. at 322 (explaining that nonmovants must establish all essential elements of cause of action on which they bear the burden of proof at trial in order to avoid summary judgment); Forbes v. Par Ten Group, Inc.,

394 S.E.2d 643, 647 (N.C. Ct. App. 1990) (requiring that genuine issue of material fact must exist as to each element of fraud in order to avoid summary judgment), <u>review denied</u>, 402 S.E.2d 824 (N.C. 1991).

Plaintiffs' fraudulent misrepresentation claim also must fail.  A viable fraudulent misrepresentation claim requires showing that:

> (1) [a] representation was made;
> (2) the representation was false;
> (3) when the representation was made, it was known to be false or made recklessly without knowledge of its truth and as a positive assertion;
> (4) the representation was made with the intention that it would be relied upon;
> (5) there was reliance upon the representation; and
> (6) damage occurred as a result.

<u>Citizens Nat'l Bank v. Kennedy and Coe</u>, 441 N.W.2d 180, 182 (Neb. 1989). Plaintiffs contend that after learning that some silicones were not physiologically inert, Dow Chemical continued to assert the safety and utility of silicone in medical implants.  These contentions, however, are entirely without support in the record.  Without evidence of a false representation, the misrepresentation claim cannot succeed, and further analysis of this claim is unnecessary.  <u>See</u> <u>Celotex</u>, 477 U.S. at 322 (same as above); <u>Forbes</u>, 394 S.E.2d at 647 (same as above).

Summary judgment was correctly granted on plaintiffs' fraud claims.

**D.**

Finally, plaintiffs allege that Dow Chemical conspired with Dow Corning to conceal and misrepresent the dangers of implanted

-26-

silicone.  To establish a civil conspiracy, plaintiffs must show five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy.  See, e.g., <u>State ex rel. Mays v. Ridenhour</u>, 811 P.2d 1220, 1226 (Kan. 1991); <u>Massey v. Armco Steel Co.</u>, 652 S.W.2d 932, 934 (Tex. 1983).  Without evidence of specific facts tending to show an agreement or a "meeting of the minds" and concerted action, a plaintiff seeking to show a civil conspiracy cannot survive a defendant's summary judgment motion.  See, e.g., <u>Anderson v. Douglas County</u>, 4 F.3d 574, 578 (8th Cir. 1993), <u>cert. denied</u>, 510 U.S. 1113 (1994); <u>Mike Pratt & Sons, Inc. v. Metalcraft, Inc.</u>, 383 N.W.2d 758, 763 (Neb. 1986) (stating that plaintiff must prove existence of agreement between two or more persons to inflict an injury upon or wrong against another).

Plaintiffs have not presented evidence sufficient to create a genuine issue of material fact on their civil conspiracy claim.  As already detailed, there is no evidence that Dow Chemical knew what type of silicone was used in TMJ implants or the dangers associated with this silicone, much less that Dow Chemical agreed with Dow Corning to conceal the hazards of the silicone in TMJ implants.  Similarly, plaintiffs offer only pure speculation, but no evidence, of a broader conspiracy encompassing all silicone products.  See <u>Anderson</u>, 4 F.3d at 578 (noting that conclusory allegations are insufficient to prove conspiracy).  While plaintiffs assert that Dow Chemical and Dow Corning conspired to selectively publish only favorable silicone test results, the research cited discusses both beneficial and potentially harmful properties of the silicones studied, and plaintiffs have made no showing that any of the research done by Dow Chemical involved the suitability of silicone for human implantation.  On the basis of plaintiffs' evidence, no

reasonable trier of fact could conclude that Dow Chemical conspired with Dow Corning to misrepresent or conceal the dangers of silicone in medical implants.  Here again, summary judgment was correctly granted in favor of Dow Chemical.

**V.**

The District Court's grant of summary judgment in favor of Dow Chemical is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT